# IN THE SUPREME COURT OF CALIFORNIA

JUSTIN KIM,

Plaintiff and Appellant,

v.

REINS INTERNATIONAL CALIFORNIA, INC.,

Defendant and Respondent.

S246911

Second Appellate District, Division Four
B278642

Los Angeles County Superior Court
BC539194

March 12, 2020

Justice Corrigan authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Liu, Cuéllar, Kruger, and Groban concurred.

KIM v. REINS INTERNATIONAL CALIFORNIA, INC.

S246911

Opinion of the Court by Corrigan, J.

This case presents an issue of first impression: Do employees lose standing to pursue a claim under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.)[1] if they settle and dismiss their individual claims for Labor Code violations? We conclude the answer is no. Settlement of individual claims does not strip an aggrieved employee of standing, as the state's authorized representative, to pursue PAGA remedies.

## I. BACKGROUND

A. *Legal Overview*

California's Labor Code contains a number of provisions designed to protect the health, safety, and compensation of workers. Employers who violate these statutes may be sued by employees for damages or *statutory* penalties. (See, e.g., § 203; see also *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103-1104 [distinguishing wages from statutory penalties].) Statutory penalties, including double or treble damages, provide recovery to the plaintiff beyond actual losses incurred. (*Murphy*, at p. 1104.) Several Labor Code statutes provide for additional *civil* penalties, generally paid to the state unless otherwise provided. (E.g., § 225.5.) Before PAGA's

---

[1] All statutory references are to the Labor Code unless otherwise stated.

1

enactment, only the state could sue for civil penalties. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 378 (*Iskanian*).) A few Labor Code violations are punishable as criminal misdemeanors. (E.g., § 215.)

Government enforcement proved problematic. As to criminal violations, local prosecutors often directed their resources to other priorities. (*Iskanian, supra,* 59 Cal.4th at p. 379.) The Labor Commissioner and other agencies were likewise hampered in their enforcement of civil penalties by inadequate funding and staffing constraints. (*Ibid.*) To facilitate broader enforcement, the Legislature enacted PAGA, authorizing "aggrieved employees" to pursue civil penalties on the state's behalf. (§ 2699, subd. (a); see *Williams v. Superior Court* (2017) 3 Cal.5th 531, 545 (*Williams*).) "Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.' " (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980-981 (*Arias*).)

An employee seeking PAGA penalties must notify the employer and the Labor and Workforce Development Agency (LWDA) of the specific labor violations alleged, along with the facts and theories supporting the claim. (§ 2699.3, subd. (a)(1)(A); see *Arias, supra,* 46 Cal.4th at p. 981.) If the agency does not investigate, does not issue a citation, or fails to respond to the notice within 65 days, the employee may sue. (§ 2699.3, subd. (a)(2).) The notice requirement allows the relevant state agency "to decide whether to allocate scarce resources to an investigation." (*Williams, supra,* 3 Cal.5th at p. 546.)

A PAGA claim is legally and conceptually different from an employee's own suit for damages and statutory penalties. An employee suing under PAGA "does so as the *proxy or agent of the state's labor law enforcement agencies*." (*Arias*, *supra*, 46 Cal.4th at p. 986, italics added.) Every PAGA claim is "a dispute between an employer and the *state*." (*Iskanian*, *supra*, 59 Cal.4th at p. 386; see *id*. at p. 384; *Arias*, at p. 986.) Moreover, the civil penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory damages or penalties that may be available to employees suing for individual violations. (*Iskanian*, at p. 381.) Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action. (*Arias*, at p. 986; *Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 501 (*Brown*).) "A PAGA representative action is therefore a type of qui tam action," conforming to all "traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation." (*Iskanian*, at p. 382.) The "government entity on whose behalf the plaintiff files suit is always the real party in interest." (*Ibid*.)

Not every private citizen can serve as the state's representative. Only an *aggrieved employee* has PAGA standing. (§ 2699, subd. (a); *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003, 1005 (*Amalgamated Transit*).) An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (§ 2699, subd. (c); hereafter § 2699(c).)[2] We have

---

[2] A "violation" is defined as "a failure to comply with any requirement of the code." (§ 22.)

held that employee unions lack standing to bring PAGA claims because the associations are not "employed by" the defendants. (§ 2699(c); see *Amalgamated Transit*, at pp. 1004-1005.) Here, plaintiff Justin Kim settled his own Labor Code claims against defendant Reins International California, Inc. (Reins). The question is whether he retains standing to prosecute a representative PAGA claim.

B. *Facts of this Case*

Reins operates restaurants in California and employed Kim as a "training manager," a position it classified as exempt from overtime laws. Kim later sued Reins in a putative class action, claiming he and other training managers had been misclassified. The operative complaint alleged causes of action for failure to pay wages and overtime (§ 1194); failure to provide meal and rest breaks (§ 226.7); failure to provide accurate wage statements (§ 226, subd. (a)); waiting time penalties (§ 203); and unfair competition (Bus. & Prof. Code, § 17200). It also sought civil penalties under PAGA (§ 2699).

Based on an agreement Kim signed when he was hired, Reins moved to compel arbitration of the "individual claims" for Kim's own damages. The motion also sought to dismiss the class claims and stay the PAGA claim until arbitration was complete. Reins acknowledged that the PAGA claim could not be waived (see *Iskanian, supra,* 59 Cal.4th at pp. 382-384) or arbitrated under the parties' agreement. The court dismissed Kim's class claims and ordered arbitration of all remaining claims except the PAGA claim and the injunctive relief portion of the unfair competition claim. The PAGA litigation was stayed until arbitration was complete. Several months later, Reins served a statutory offer to settle all of Kim's "individual claims" for

$20,000, attorney's fees, and costs. (See Code Civ. Proc., § 998.) Kim accepted. In exchange, Kim dismissed his individual claims, leaving only the PAGA claim for resolution.

With the stay lifted, Reins successfully moved for summary adjudication on the ground that Kim lacked standing. Reasoning that Kim's rights had been "completely redressed" by the settlement and dismissal of his own claims, the court concluded Kim was no longer an " 'aggrieved employee' " with PAGA standing. Judgment was entered for Reins[3] and affirmed on appeal. We granted review to determine whether Kim's settlement of individual Labor Code claims extinguished his PAGA standing.

## II. DISCUSSION

A standing requirement ensures that "courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 439.) When, as here, a cause of action is based on statute, standing rests on the provision's language, its underlying purpose, and the legislative intent. (See *Osborne v. Yasmeh* (2016) 1 Cal.App.5th 1118, 1127.)

A.    *Interpretation of PAGA's Standing Provision*

"In construing a statute, our task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment. [Citation.] We look first to the words of the statute,

---

[3]    After granting the summary adjudication motion, the court dismissed the action in its entirety. This appeal does not challenge the dismissal of Kim's previously stayed claim for injunctive relief.

which are the most reliable indications of the Legislature's intent. [Citation.] We construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole." (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487.) "If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1107.) Considering the remedial nature of legislation meant to protect employees, we construe PAGA's provisions broadly, in favor of this protection. (See *Williams, supra*, 3 Cal.5th at p. 548; *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026-1027.)

### 1. *Statutory Language*

The plain language of section 2699(c) has only two requirements for PAGA standing. The plaintiff must be an aggrieved employee, that is, someone "who was employed by the alleged violator" and "against whom one or more of the alleged violations was committed." (§ 2699(c).) Both requirements derive from readily ascertainable facts, and both are satisfied here. Kim was employed by Reins and alleged that he personally suffered at least one Labor Code violation on which the PAGA claim is based. Kim is thus an "aggrieved employee" with standing to pursue penalties on the state's behalf.

Reins concedes Kim had PAGA standing when he sued but contends the standing somehow ended when Kim settled his claims for individual relief. Reins argues PAGA standing is

premised on a plaintiff's injury. In its view, "Whether someone has representative standing under PAGA depends on whether the employee has a continuing injury to redress via the PAGA mechanism, through the time of judgment. . . . Once the injury has been redressed through settlement, . . . it is no longer a continuing injury capable of redress through PAGA." The argument fails because it is at odds with the language of the statute, the statutory purpose supporting PAGA claims, and the overall statutory scheme.

Reins contends Kim is no longer an "aggrieved employee" because he accepted compensation for his injury. The logic here is illusive. The Legislature defined PAGA standing in terms of violations, not injury. Kim became an aggrieved employee, and had PAGA standing, when one or more Labor Code violations were committed against him. (See § 2699(c).) Settlement did not nullify these violations. The *remedy* for a Labor Code violation, through settlement or other means, is distinct from the *fact* of the violation itself. For example, employers can pay an additional hour of wages as a remedy for failing to provide meal and rest breaks. (§ 226.7, subd. (c).) But we have held that payment of this statutory remedy "does not *excuse* a section 226.7 violation." (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1256, italics added.)

Further, Reins's assertion that a PAGA plaintiff is no longer "aggrieved" once individual claims are resolved is at odds with the Legislature's explicit definition. Section 2699(c) defines an "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." It does not require the employee to claim that *any* economic injury resulted from the alleged violations. " ' "When a statute prescribes the meaning

to be given to particular terms used by it, that meaning is generally binding on the courts." ' " (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998.) Reins's use of "aggrieved" as synonymous with having an unredressed injury is at odds with the statutory definition.[4]

Reins's interpretation would add an expiration element to the statutory definition of standing. It would expand section 2699(c) to provide that an employee who accepts a settlement for individual damage claims is no longer aggrieved. Of course, the Legislature said no such thing. In construing a statute, we are " 'careful not to add requirements to those already supplied by the Legislature.' " (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 719.) " ' "Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." ' " (*Ibid*.; see *Vasquez v. State of California* (2008) 45 Cal.4th 243, 253.) If the Legislature intended to limit PAGA standing to employees with unresolved compensatory claims when such claims have been alleged, it could have worded the statute accordingly. "That it did not

---

[4]    Reins accords too much significance to language in our prior opinions observing that PAGA standing requires the plaintiff to have suffered "harm" (*Williams, supra,* 3 Cal.5th at p. 558) or "injury" (*Amalgamated Transit, supra,* 46 Cal.4th at p. 1001) from the employer's wrongful conduct. Of course, "cases are not authority for propositions that are not considered." (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043.) Read in context, these terms were simply shorthand for the requirement that a PAGA representative be someone "against whom one or more of the alleged violations was committed." (§ 2699(c).)

implies no such . . . requirement was intended." (*Williams*, *supra*, 3 Cal.5th at p. 546.)

The statutory language reflects that the Legislature did not intend to link PAGA standing to the maintenance of individual claims when such claims have been alleged. An employee has PAGA standing if "*one or more* of the alleged violations was committed" against him. (§ 2699(c), italics added.) This language indicates that PAGA standing is not inextricably linked to the plaintiff's own injury. Employees who were subjected to at least one unlawful practice have standing to serve as PAGA representatives even if they did not personally experience each and every alleged violation. (§ 2699(c).) This expansive approach to standing serves the state's interest in vigorous enforcement. (See *Arias*, *supra*, 46 Cal.4th at pp. 980-981.)

Consistent with our interpretation of standing, two recent decisions have concluded that a plaintiff's inability to obtain individual relief is not necessarily fatal to the maintenance of a PAGA claim. In *Raines v. Coastal Pacific Food Distributors, Inc.* (2018) 23 Cal.App.5th 667, 670, the plaintiff sought statutory and civil penalties for a failure to provide accurate wage statements. (§ 226, subd. (a).) The court concluded the individual claim was properly dismissed because the plaintiff failed to show a quantifiable injury from the violation (see § 226, subd. (e)), but it was error to dismiss the related PAGA claim because injury is not a requirement for civil penalties. (*Raines*, at pp. 678-680.) Rejecting the notion "that ' "no injury" amounts to "no violation" ' " (*id.* at p. 680), the court explained that "damages and civil penalties have different purposes . . . . Damages are intended to be compensatory, to make one whole. [Citation.] Accordingly, there must be an injury to compensate.

On the other hand, 'Civil penalties, like punitive damages, are intended to punish the wrongdoer and to deter future misconduct.' [Citation.] An act may be wrongful and subject to civil penalties even if it does not result in injury." (*Id*. at p. 681.) Similarly, in *Lopez v. Friant & Associates, LLC* (2017) 15 Cal.App.5th 773, 784-785, the plaintiff's failure to satisfy the requirements for individual relief under section 226, subdivision (e) did not defeat his PAGA claim for civil penalties. The court observed that a PAGA claim is not "derivative of, or dependent on" an individual claim for relief. (*Lopez*, at p. 786.)

### 2. *Statutory Purpose*

As noted, PAGA claims are different from conventional civil suits. The Legislature's sole purpose in enacting PAGA was "to augment the limited enforcement capability of the [LWDA] by empowering employees to enforce the Labor Code as representatives of the Agency." (*Iskanian*, *supra*, 59 Cal.4th at p. 383; see *id*. at pp. 388-389.) Accordingly, a PAGA claim is an enforcement action between the LWDA and the employer, with the PAGA plaintiff acting on behalf of the government. (*Id*. at pp. 382-384.) The state can deputize anyone it likes to pursue its claim, including a plaintiff who has suffered no actual injury. (See *id*. at p. 382.) Moreover, civil penalties recovered on the state's behalf are intended to "remediate present violations and deter future ones," *not* to redress employees' injuries. (*Williams*, *supra*, 3 Cal.5th at p. 546; see *Iskanian*, at p. 381; *Brown*, *supra*, 197 Cal.App.4th at p. 501.)

Although representative in nature, a PAGA claim is not simply a collection of individual claims for relief, and so is different from a class action. The latter is a procedural device for aggregating claims "when the parties are numerous, and it

is impracticable to bring them all before the court." (Code Civ. Proc., § 382.) In a class action, the "representative plaintiff still possesses only a single claim for relief—the plaintiff's own." (*Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1589 (*Watkins*).) If a representative plaintiff voluntarily settles her claim, she no longer has an interest in the class action and may lose the ability to represent the class.[5] (*Watkins*, at p. 1592; see *Wallace v. GEICO General Ins. Co.*, *supra*, 183 Cal.App.4th at pp. 1400-1401.) "But a representative action under PAGA is not a class action." (*Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 757 (*Huff*).) There is no individual component to a PAGA action because " '*every* PAGA action . . . is a representative action on behalf of the state.' " (*Iskanian*, *supra*, 59 Cal.4th at p. 387.) Plaintiffs may bring a PAGA claim *only* as the state's designated proxy, suing on behalf of *all* affected employees. (See *Arias*, *supra*, 46 Cal.4th at p. 986; *Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119, 1123-1124.)

---

[5] Courts have distinguished between voluntary and involuntary settlements as a means of addressing the "pick off" problem. The problem arises when a defendant pays the full amount of the named plaintiff's individual claim, then seeks dismissal of the class action on the ground that the named plaintiff is no longer part of the class. (*Watkins, supra,* 172 Cal.App.4th at p. 1589.) By this tactic, "the defendant seeks to avoid exposure to the class action by 'picking off' the named plaintiff, sometimes . . . serially." (*Ibid.*) However, both California and federal courts "have concluded that the involuntary receipt of relief does not, of itself, prevent the class plaintiff from continuing as a class representative." (*Id.* at p. 1590; see *Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326, 332-333, 339; *Wallace v. GEICO General Ins. Co.* (2010) 183 Cal.App.4th 1390, 1398-1399.)

Reins's injury-based view of standing would deprive many employees of the ability to prosecute PAGA claims, contrary to the statute's purpose to ensure effective code enforcement. "Hurdles that impede the effective prosecution of representative PAGA actions undermine the Legislature's objectives." (*Williams*, *supra*, 3 Cal.5th at p. 548.)

3.    *Statutory Context*

Reins's interpretation also runs counter to the broader statutory scheme. (See *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1384-1385.) " '[W]e do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' " (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276.)

a.    *Other PAGA Provisions*

"Aggrieved employee" is a term of art in PAGA. It governs not just who has standing to bring a PAGA claim, but also who may recover a share of penalties and how those penalties are calculated. Reins's interpretation of the term would seriously impair the state's ability to collect and distribute civil penalties under these provisions.

Section 2699, subdivision (f)(2) calculates the amount of civil penalties based on the number of violations per pay period "for each aggrieved employee." If plaintiffs who settle individual claims are no longer considered "aggrieved employees," as Reins asserts, violations against them would no longer be included in this calculation. As a result, the state's recovery in future PAGA suits, or through its own suit, would be diminished. Employers could potentially avoid paying any penalties to the state simply by settling with the individual employees. And these individual

settlements would not be subject to the safeguards of PAGA settlements, which require notice to the LWDA and court oversight. (See § 2699, subd. (*l*)(2).)

Additionally, because section 2699, subdivision (i) provides that 25 percent of civil penalties recovered are to be distributed to "aggrieved employees," plaintiffs who settle individual claims would not be eligible to receive a share of penalties, even if their settlements specifically excluded compensation for civil penalties that would otherwise be due. Thus, beyond considerations of standing, Reins's interpretation would allow employers to reduce their liability for civil penalties, without state oversight and contrary to PAGA's goal of strengthening Labor Code enforcement. (See *Arias, supra,* 46 Cal.4th at p. 980.)

b.    *Stand-Alone PAGA Claims*

Reins's suggestion that Kim must maintain his individual claim for relief to retain PAGA standing also conflicts with plaintiffs' recognized ability to bring stand-alone PAGA claims. Section 2699, subdivision (g)(1) states that "[n]othing in this part shall operate to limit an employee's right to pursue or recover other remedies available under state or federal law, *either separately or concurrently* with an action taken under this part" (italics added). This provision expressly authorizes PAGA suits brought "separately" from individual claims for relief. (§ 2699, subd. (g)(1).) Indeed, many PAGA actions consist of a single cause of action seeking civil penalties. Appellate courts have rejected efforts to split PAGA claims into individual and representative components. (See, e.g., *Zakaryan v. The Men's Wearhouse, Inc.* (2019) 33 Cal.App.5th 659, 671-672, disapproved on another ground in *ZB, N.A. v. Superior Court*

(2019) 8 Cal.5th 175, 196, fn. 8; *Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408, 420-421.)  Standing for these PAGA-only cases cannot be dependent on the maintenance of an individual claim because individual relief has not been sought.

### c.	*Penalty Provisions Without a Private Right of Action*

Premising PAGA standing on the existence of an unredressed injury would also be inconsistent with numerous Labor Code statutes that impose civil penalties without affording a private right of action.  The Legislature authorized PAGA actions for a broad range of Labor Code violations.  (See § 2699.5.)  While these statutes all describe prohibited conduct, many do not authorize individual damage suits by employees.  " '[W]hen regulatory statutes provide a comprehensive scheme for enforcement by an administrative agency,' " as with the Labor Code, " 'courts ordinarily conclude that the Legislature intended the administrative remedy to be exclusive unless the statutory language or legislative history clearly indicates an intent to create a private right of action.' "  (*Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1132, disapproved on another ground in *ZB, N.A. v. Superior Court, supra,*  8 Cal.5th at p. 196, fn. 8.)  Decisions examining specific Labor Code provisions enforceable under PAGA have frequently concluded that the statutes in question do not support a private right to sue.  *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 601, for example, held there is no private right of action under section 351, which prohibits employers from taking employees' tips.  (*Lu*, at p. 601.)  Nor can employees misclassified as independent contractors sue for relief directly under section 226.8.  (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 337-341; cf. *Thurman*, at p. 1132 [no

private right of action for employees to enforce an Industrial Welfare Commission wage order].) Most recently, we concluded employees have no private right of action to pursue unpaid wages under section 558. (*ZB*, at p. 188.)

The availability of civil penalties for statutes that provide no individual relief highlights the flaw in Reins's conception of PAGA standing. In Reins's view, PAGA standing requires that the plaintiff have an unredressed injury. But plaintiffs cannot address a claimed injury by private suit unless the statute permits it. The concept of injury is especially inapposite in this context. Requiring the existence of an unredressed injury to support standing would be problematic for PAGA suits to enforce the many Labor Code statutes that do not create a private right to sue. Indeed, the very reason the Legislature enacted PAGA was to enhance enforcement of provisions punishable only through government-initiated proceedings. (See *Iskanian, supra*, 59 Cal.4th at p. 379; *Arias, supra*, 46 Cal.4th at pp. 980-981.) Reins's formulation of standing would contravene this remedial purpose.

4. *Legislative History*

Although the meaning of PAGA's standing requirement is plain, the parties have advanced several arguments based on legislative history. An examination of these matters further supports our conclusion that PAGA standing is not lost when representatives settle their claims for individual relief.[6]

---

[6] The parties and amici curiae also assert numerous policy arguments. However, we are called upon to interpret section 2699(c) as written. Where, as here, the statutory language, purpose, and context all point to the same interpretation, policy arguments that the statute should have

The original draft of the bill that enacted PAGA authorized the recovery of civil penalties by an "aggrieved employee" but did not define that term. (Sen. Bill No. 796 (2003-2004 Reg. Sess.) as introduced Feb. 21, 2003.) Employer groups objected that PAGA would be vulnerable to the same abuses recently exposed under the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.). (See Sen. Judiciary Com., Analysis of Sen. Bill No. 796 (2003-2004 Reg. Sess.) as amended Apr. 22, 2003, p. 7 (Senate Judiciary Committee Analysis).) "California law previously authorized any person acting for the general public to sue for relief from unfair competition." (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227 (*Californians for Disability Rights*).) However, some private attorneys had "exploited the generous standing requirement of the UCL" by filing " 'shakedown' suits to extort money from small businesses" for minor or technical violations where no client had suffered an actual injury. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 316; see *Californians for Disability Rights*, at p. 228.) In response to this practice and to ensure that PAGA suits could not be brought by "persons who suffered no harm from the alleged wrongful act" (Senate Judiciary Committee Analysis, p. 7), the sponsors added the definition of "aggrieved employee" that now appears in section 2699(c). (See Sen. Amend. to Sen. Bill No. 796 (2003-2004 Reg. Sess.) May 1, 2003, § 2; Senate Judiciary Committee Analysis, pp. 7-8; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 796 (2003-2004 Reg. Sess.) as amended May 12, 2003, p. 4; Assem. Com. on Labor

---

been written differently are more appropriately addressed to the Legislature.

and Employment, Analysis of Sen. Bill No. 796 (2003-2004 Reg. Sess.) as amended July 2, 2003, p. 4.)

Reins and its supporting amici curiae contend this history illustrates a legislative intent to restrict PAGA standing to plaintiffs with some "redressable injury." It is apparent that PAGA's standing requirement was meant to be a departure from the "general public" (*Californians for Disability Rights*, *supra*, 39 Cal.4th at p. 227) standing originally allowed under the UCL. However, Reins reads too much into this objective. Nothing in the legislative history suggests the Legislature intended to make PAGA standing dependent on the existence of an unredressed injury, or the maintenance of a separate, unresolved claim. Such a condition would have severely curtailed PAGA's availability to police Labor Code violations because, as noted, many provisions do not create private rights of action or require an allegation of quantifiable injury. Instead, true to PAGA's remedial purpose, the Legislature conferred fairly broad standing on all plaintiffs who were employed by the violator and subjected to at least one alleged violation. Reins's narrower construction would thwart the Legislature's clear intent to deputize employees to pursue sanctions on the state's behalf. (See *Iskanian*, *supra*, 59 Cal.4th at p. 388; *Huff*, *supra*, 23 Cal.App.5th at p. 756.)

B.   *Preclusive Effect of an Individual Claim's Dismissal*

Apart from its statutory interpretation arguments, Reins also contends principles of claim preclusion and retraxit bar Kim from litigating the PAGA claim. Not so.

The claim preclusion doctrine, formerly called res judicata, "prohibits a second suit between the same parties on the same cause of action." (*Boeken v. Philip Morris USA, Inc.*

(2010) 48 Cal.4th 788, 792 (*Boeken*).) "Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).) "Retraxit" describes the particular application of claim preclusion to a claim that has been dismissed with prejudice. (See *Rice v. Crow* (2000) 81 Cal.App.4th 725, 733-734.) A dismissal with prejudice is considered a judgment on the merits preventing subsequent litigation between the parties on the dismissed claim. (*Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp.* (2013) 214 Cal.App.4th 1520, 1527; *Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 820.)

It is unnecessary to address the preclusion elements in detail because Kim's settlement specifically excluded the pending PAGA claim. Even as to claims that might otherwise be barred, " 'parties may by agreement limit the legal effect of a dismissal with prejudice so that it would not constitute a retraxit and affect their rights in a later pending action.' " (*Legendary Investors Group No. 1, LLC v. Niemann* (2014) 224 Cal.App.4th 1407, 1411.) Where a settlement agreement expressly excludes certain claims, the resulting dismissal does not preclude further litigation on the excluded claim. (See *ibid.*) Reins's preclusion argument stumbles at this threshold and is inconsistent with the very agreement it made.[7]

---

[7] Reins's conduct below is troubling. Reins conceded Kim's PAGA claim had to be stayed in superior court while the other claims were arbitrated. It then settled the arbitrable claims with an offer that encompassed only Kim's "individual claims." Indeed, Reins's one-page offer mentions Kim's individual claims three times. When Kim returned to court to litigate the PAGA

Moreover, Reins attempts to apply preclusion principles to claims within the *same lawsuit*, yet we have consistently described claim preclusion as a bar to claims brought in a "second suit." (E.g., *DKN Holdings*, *supra*, 61 Cal.4th at p. 824; *Boeken*, *supra*, 48 Cal.4th at p. 792; *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.) The doctrine "promotes judicial economy" because "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date." (*Mycogen Corp.*, at p. 897.) Kim did not attempt to split his claims against Reins or relitigate claims that had been previously resolved. His single complaint encompassed seven causes of action. The six claims for specific Labor Code violations were bifurcated and sent to arbitration at Reins's own urging. The seventh claim seeking PAGA penalties was stayed pending completion of the arbitration. The PAGA claim was never resolved. Indeed, consistent with the settlement agreement, Kim's request for dismissal of the individual claims specified that "Cause of Action Seven for penalties pursuant to Lab. Code § 2699 *et seq.* ('PAGA') for the underlying violations . . . shall remain." Reins

---

claim, *which the parties had specifically carved out of the settlement*, Reins argued Kim had lost standing. Even if Reins's prior conduct did not amount to an estoppel, this turnabout was hardly fair play. Moreover, Reins made its settlement offer pursuant to Code of Civil Procedure section 998. If Kim had rejected the offer and failed to obtain a more favorable award in arbitration, he would have been liable for his own costs *and* all costs Reins incurred after making the offer. (Code Civ. Proc., § 998, subd. (c)(1).) Under the arguments Reins now advances, section 998 offers would present employees like Kim with a Hobson's choice: either reject the offer and risk incurring substantial liability for costs or accept the offer and lose the ability to pursue the PAGA claim.

cites no authority, and we are aware of none, holding that the resolution of some claims can bar the litigation of other claims that were asserted in the *same* lawsuit.

Reins's reliance on *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562 is likewise unavailing. In *Villacres*, an employer settled a class action seeking recovery for several Labor Code violations and civil penalties under section 558. Two days after the settlement, a class member brought a PAGA claim for penalties under additional statutes. (*Villacres*, at p. 569.) The court held claim preclusion barred this second suit because the "PAGA claims *could have been raised* in the prior action." (*Id*. at p. 584.) Generally speaking, a prior judgment between the same parties "is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable." (*Sutphin v. Speik* (1940) 15 Cal.2d 195, 202.) But, even assuming *Villacres* was correctly decided, the situation here is obviously distinguishable. Kim did not attempt to litigate his claims piecemeal. He joined all claims against Reins, including one for PAGA penalties, in a single action. Claim preclusion does not apply under these circumstances.

### III. DISPOSITION

The Court of Appeal judgment is reversed, and the case is remanded to the trial court for further proceedings on the PAGA cause of action.

**CORRIGAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Kim v. Reins International California, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 18 Cal.App.5th 1052
**Rehearing Granted**

_____

**Opinion No.** S246911
**Date Filed:** March 12, 2020

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Kenneth R. Freeman

_____

**Counsel:**

Kingsley & Kingsley, Eric B. Kingsley, Ari J. Stiller and Lyubov Lerner for Plaintiff and Appellant.

Cynthia L. Rice and Javier J. Castro for California Rural Legal Assistance, Inc., California Rural Legal Assistance Foundation, California Employment Lawyers Association, Consumer Attorneys of California and Asian Americans Advancing Justice-LA as Amici Curiae on behalf of Plaintiff and Appellant.

Capstone Law, Ryan H. Wu, Melissa Grant and John E. Stobart for Bet Tzedek as Amicus Curiae on behalf of Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Spencer C. Skeen, Tim L. Johnson, Jesse C. Ferrantella and Jonathan H. Liu for Defendant and Respondent.

Davis Wright Tremaine, Rochelle L. Wilcox, Janet L. Grumer and Aaron N. Colby for Restaurant Law Center, California Restaurant Association and Chamber of Commerce of the United States of America as Amici Curiae on behalf of Defendant and Respondent.

Fine, Boggs & Perkins, John P. Boggs and Cory J. King for California New Car Dealers Association as Amicus Curiae on behalf of Defendant and Respondent.

Morgan, Lewis & Bockius, Barbara J. Miller, John D. Hayashi and Thomas M. Peterson for The Employers Group as Amicus Curiae on behalf of Defendant and Respondent.

Blank Rome, Laura Reathaford and Natalie Alameddine for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Eric B. Kingsley
Kingsley & Kingsley, APC
16133 Ventura Boulevard, Suite 1200
Encino, CA 91436
(818) 990-8300

Spencer C. Skeen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA 92122
(858) 652-3100